IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03008

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Non-Profit Corporation

      Plaintiffs,

vs.

ONG INVESTMENTS, INC., a Colorado Corporation, and
ACSC LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company

      Defendant.

_____/

# COMPLAINT

Plaintiffs, JOHN MEGGS, an Individual, and ACCESS 4 ALL, INC., a Florida Non-Profit Corporation ("Plaintiff" or "Plaintiffs"), on their behalf and on behalf of all other-mobility impaired individuals similarly situated hereby sues the Defendants, ONG INVESTMENTS, INC., a Colorado Corporation, and ACSC LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company ("Defendant" or "Defendants"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.* ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

## The Parties

1.     Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris. Although a resident of California, Mr. Meggs splits his time between California

Case 1:21-cv-03008-CMA-SKC   Document 1   Filed 11/08/21   USDC Colorado   Page 2 of 15

and Colorado.

2. Plaintiff, ACCESS 4 ALL, INC., is a non-profit corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, ONG INVESTMENTS, INC., a Colorado Corporation, owns, leases, leases to, or operates a place of public accommodation, in this instance a shopping center, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

4. Defendant, ACSC LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company, owns, leases, leases to, or operates a place of public accommodation, in this instance a shopping center, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

5. Defendant's, ONG INVESTMENTS, INC., property is a shopping center/plaza located at 225 S. Sheridan Blvd., Lakewood, CO 80232, in the County of Jefferson.

6. Defendant's, ACSC LIMITED LIABILITY COMPANY, property is a shopping center/plaza located at 145 & 245 S. Sheridan Blvd., Lakewood, CO 80232, in the County of Jefferson.

7. Together these parcels of land form a large shopping center/plaza known as Almeda Crossing Shopping Center ("Almeda Crossing" or the "Subject Property").

8. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

9. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given

2

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

10.    Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

11.    Defendant, ONG INVESTMENTS, INC., owns or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

12.    Defendant, ACSC LIMITED LIABILITY COMPANY, owns or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[3]

13.    Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the use of a wheelchair to ambulate.

14.    Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

---

[1] *See, also*, 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104
[3] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104
[4] as defined by 28 C.F.R. § 36.105(b)(1-2)

**Factual Context**

15.     Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

16.     Mr. Meggs encounters architectural barriers at the majority of the public places he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous and even dangerous for him and other wheelchair users.

17.     The barriers to access that Mr. Meggs experiences at differing places of public accommodation are similar in nature. For example, he is repeatedly faced with sloping in parking lots, cracks in sidewalks and asphalt, and improper restrooms and water closets (even when designated "accessible" or "handicapped"). He is often angered and disheartened by the repetitiveness of the complaints he is forced to make to employees and management, to no avail. Mr. Meggs believes that the only way to affect change is through the ADA.

18.     Mr. Meggs has visited the Subject Property on multiple occasions, his most recent visit occurred on or about September 10, 2021.  On this occasion Mr. Meggs visited the Subject Property as a bone fide purchaser in an attempt to avail himself of the goods and services offered to the public within, but found that the Subject Property contained many violations of the ADA, both architecturally and in policy.

19.     The Subject Property is not the type of accommodation that requires reservations, but Mr. Meggs intends to return on or about December 12, 2021, and on or about March 1, 2021, during his next visits to the Denver area - where he is a frequent traveler, regularly conducts

business, and is speculating on property. He intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

20. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

21. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendants.

22. Mr. Meggs has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property, as described, but not necessarily limited to, the barriers he has personally experienced which are listed in paragraph 27 of this Complaint.

23. Following any resolution of this matter Mr. Meggs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

### COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

24. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

25. The Defendants have discriminated against the Plaintiffs, and others similarly-situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

26. A preliminary inspection of the Defendants' property, Almeda Crossing, has shown that violations of the ADA exist.

27. The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Subject Property:

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Subject Property lack adequate access aisles, proper identification signage, and are not maintained; they contain abrupt changes of level, surface cracks, and slopes greater than 2.0%; in violation of Sections 502 and 502.4 of the 2010 Standards for Accessible Design. The lack of adequate access aisles and the presence of inaccessible parking spaces forces Mr. Meggs to park in open areas of the parking lot where he can freely access his vehicle; excessive slopes within the parking spaces and the exterior accessible route present him with a tipping hazard and could cause damage to his wheelchair.

b. Curb ramps are not provided in all areas of the Subject Property; those which are provided do not comply with the ADA and are unsafe for use by Mr. Meggs. The existing curb ramps contain excessive sloping, abrupt changes of level, and lack the required level landing areas; in violation of Sections 402 and 406 of the 2010 Standards for Accessible Design. These improper curb ramps, located along the exterior accessible route, have forced Mr. Meggs to navigate through excessive sloping, abrupt changes of level and a diminished turning radius at the top of the curb ramp - these are all tipping hazards and could cause damage to his wheelchair.

c. The exterior accessible route leading from the parking spaces to the building and those

      connecting parcel to parcel at Almeda Crossing do not comply with ADA Standards and are unsafe for use by Mr. Meggs. The exterior accessible routes contain slopes beyond allowable limits, abrupt changes of level, and they fail to provide a safe accessible route to ramps or curb ramps, a violation of Section 402 of the 2010 Standards for Accessible Design. When travelling from the parking lot to the building, or from parcel to parcel, along the exterior accessible route Mr. Meggs is forced travel around obstacles into the traffic area of the center which puts him in danger of encountering oncoming vehicles.

d. Almeda Crossing fails to provide a safe, compliant, and accessible route to the street or sidewalk; in violation of Section 206.2.1 of the 2010 Standards for Accessible Design. Due to this barrier Mr. Meggs could not access the Subject Property from those areas, limiting his options for access and preventing the use of public transportation.

**Access to Goods and Services**

e. Tenant spaces D'Lorenzo Pizza & Wings (perhaps formerly known as Mamma Mia's Pizza), Hunan Express, and Pho Mignon fail to provide the requisite number of accessible dining tables, in violation of Section 902 of the 2010 Standards for Accessible Design. Due to the lack of accessible tables Mr. Meggs has been unable to dine in a comfortable manner.

f. Payment counters throughout Almeda Crossing are mounted beyond the reach of Mr. Meggs, and equal facilitation is not provided through policy; a violation of Sections 308 and 904 of the 2010 Standards for Accessible Design.

g. When attempting to enter tenant spaces at Almeda Crossing, Mr. Meggs is impeded by slopes beyond the allowable limits at the base of the door and abrupt changes of level, in violation of Section 404 of the 2010 Standards for Accessible Design. Due to these barriers These barriers could cause damage to Mr. Meggs' wheelchair, and he cannot enter the

tenant spaces without assistance.

**Restrooms**

h.  The restrooms provided within tenant spaces at Almeda Crossing are not ADA compliant and are unsafe for use by Mr. Meggs. The barriers to access personally experienced by Mr. Meggs within the restrooms include inaccessible water closets which lack proper controls, and a lack of wheelchair maneuvering clearance; in violation of Section 601 of the 2010 Standards for Accessible Design.

i.  The restrooms located within tenant spaces, Hunan Express and Viet Hoa Supermarket, provide dispensers which are mounted beyond Mr. Meggs' reach, a violation of Section 308 of the 2010 Standards for Accessible Design. While using these restrooms Mr. Meggs could not access the dispensers due to their improper location.

j.  The lavatories located within the restrooms at Hunan Express and Viet Hoa Supermarket lack the proper knee clearance required, in violation of Section 606 of the 2010 Standards for Accessible Design. Mr. Meggs could not wash his hands in the restroom because he could neither approach nor reach the sink.

k.  The restrooms within Hunan Express and Viet Hoa Supermarket contain improper centerlines for the water closets and/or flush controls which are mounted on the wall side; a violation of Section 604 of the 2010 Standards for Accessible Design. Mr. Meggs could not access the flush controls due to their improper location; thus Mr. Meggs has been unable to make full use of these restrooms without assistance. Improper centerlines on water closets make transitioning to and from his wheelchair to the water closet difficult because it affects the water closet's location relative to the grab bars.

28. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 Standards"), as promulgated by the U.S. Department of Justice.[5]

29. The discriminatory violations described in paragraph 27 may not be an exhaustive list of the ADA violations that exist at the Subject Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendants' place of public accommodation to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

30. Mr. Meggs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

31. Defendants have discriminated against Mr. Meggs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their place of public accommodation or commercial facility in violation of the ADA.

32. Defendants continue to discriminate against Mr. Meggs, and all those similarly-

---

[5] 28 C.F.R. § 36.104

situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

33. Defendants continue to discriminate against Mr. Meggs, and all those similarly-situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

34. Defendants continue to discriminate against Mr. Meggs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

35. If the Defendant's facility is one which was designed and constructed for first occupancy after January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

36. Pursuant to 28 C.F.R. § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10]

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)
[8] 42 U.S.C. § 12181(b)(2)(A)(iii)
[9] as defined by 28 C.F.R. § 36.401(a)(2)
[10] 28 C.F.R. § 36.402(a)(2)

37. Pursuant to 28 C.F.R. § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

38. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Subject Property must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

39. Plaintiffs are not required to notify Defendants of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

40. Mr. Meggs is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendants, a

remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

41.  Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

42.  Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr. Meggs injunctive relief, including an order to require the Defendants to alter the Subject Property and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiffs respectfully request:

a.  The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b.  Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

---

[11] 42 U.S.C. § 12188(b)(2)

          treated differently than other individuals because of the absence of auxiliary aids and services.

    c.    An award of attorney fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

    d.    Such other relief as the Court deems just and proper and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
### Violation of Colorado Anti-Discrimination Act, C.S.R. § 24-34-601 *et seq*. (CADA)

43.    The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

44.    John Meggs is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

45.    Defendants' facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

46.    Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[12]

47.    Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

48.    Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand

---

[12] C.S.R. § 24-34-601(2)(b)

five hundred dollars ($3,500.00), and an award of attorney fees and costs.

49. Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

50. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

51. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

52. As set forth above, Defendants have violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

53. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

    a. That this Court assume jurisdiction.

    b. An injunction ordering Defendant to comply with the ADA and the CADA.

    c. An award of monetary damages to Mr. Meggs; to the maximum extent permitted.

    d. Reasonable attorney fees and costs.

      e.      An Order requiring the Defendants to maintain the required accessible features at the Subject Property.

      f.      Other relief that this Court deems just and proper; and is allowable under the CADA.

Respectfully submitted on this 8th day of November 2021.

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Phone (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
*Attorney for Plaintiffs, John Meggs and Access 4 All, Inc.*